AO 243 (Rev. 01/15)                                                                                           Page 2

### MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Southern District of Florida |
|---|---|---|
| Name *(under which you were convicted)*:<br> Edward J. DiMaria | | Docket or Case No.:<br> 17-CR-20898-KMM |
| Place of Confinement:<br> Devens Federal Medical Center, Ayer, Massachusetts | Prisoner No.:<br> 16900-104 | |
| UNITED STATES OF AMERICA<br><br>V. | Movant *(include name under which convicted)*<br><br>Edward J. DiMaria | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   United States District Court, Southern District of Florida (Miami, Florida)

   (b) Criminal docket or case number (if you know):   17-CR-20898-KMM

2. (a) Date of the judgment of conviction (if you know):   9/26/2018

   (b) Date of sentencing:   9/25/2018

3. Length of sentence:   Ten years imprisonment

4. Nature of crime (all counts):

   18 USC 371 (conspiracy to commit securities fraud);  18 USC 1001 (false statement to a federal agency)

5. (a) What was your plea?  (Check one)

   (1) Not guilty ☐          (2) Guilty ☑          (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have?  (Check one)          Jury ☐          Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?          Yes ☐          No ☑

8. Did you appeal from the judgment of conviction?          Yes ☐          No ☑

AO 243 (Rev. 01/15)                                                                                                              Page 3

9.   If you did appeal, answer the following:

    (a)  Name of court: _____

    (b)  Docket or case number (if you know): _____

    (c)  Result: _____

    (d)  Date of result (if you know): _____

    (e)  Citation to the case (if you know): _____

    (f)  Grounds raised:

    (g)  Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☑

        If "Yes," answer the following:

        (1)  Docket or case number (if you know): _____

        (2)  Result: _____

        (3)  Date of result (if you know): _____

        (4)  Citation to the case (if you know): _____

        (5)  Grounds raised:

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐   No ☑

11.  If your answer to Question 10 was "Yes," give the following information:

    (a)  (1)  Name of court: _____

        (2)  Docket or case number (if you know): _____

        (3)  Date of filing (if you know): _____

        (4)  Nature of the proceeding: _____

        (5)  Grounds raised:

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(b)   If you filed any second motion, petition, or application, give the same information:

(1)   Name of court: _____

(2)   Docket of case number (if you know): _____

(3)   Date of filing (if you know): _____

(4)   Nature of the proceeding: _____

(5)   Grounds raised:

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(c)   Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)   First petition:          Yes ☐        No ☐

(2)   Second petition:      Yes ☐        No ☐

(d)   If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

AO 243 (Rev. 01/15)                                                                                          Page 5

**GROUND ONE:**  Ineffective assistance of trial/plea counsel in affirmatively misadvising the movant regarding the
relevant elements, procedural rights, and defenses available that caused the movant to waive his
right to indictment and trial.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See addendum attached hereto for statement of Ground One

(b)  **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2)  If you did not raise this issue in your direct appeal, explain why:

Ineffective assistance of counsel claims are ordinarily not cognizable on direct appeal.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

---

**GROUND TWO:**   Due process violation in the involuntary, unknowing, and unintelligent entry of a guilty plea, where movant lacked an adequate understanding of factual and legal matters relevant to his defense and where movant is actually innocent of the offenses.

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See addendum attached hereto for statement of Ground Two

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

Factual record for claim was not yet developed and claim requires consideration of extra-record facts.

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

  Yes ☐     No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

  Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

  Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
      issue:

**GROUND THREE:**   Ineffective assistance of sentencing counsel in stipulating to or failing to contest unwarranted
                    sentencing guideline enhancements for loss amount, number of victims, *******

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See addendum attached hereto for statement of Ground Three.

**(b)  Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☑

    (2)  If you did not raise this issue in your direct appeal, explain why:

    Ineffective assistance of counsel claims are ordinarily not cognizable on direct appeal.

**(c)  Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☑

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐      No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐      No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐      No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
      issue:

**GROUND FOUR:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☐        No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ☐        No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐          No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐          No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

The claims presented in this motion were not previously presented.  Ineffective assistance of counsel claims are ordinarily not cognizable on direct appeal.  And the factual record was no sufficiently developed to permit raising the due process and actual innocence claims.

14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?          Yes ☐          No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

_____

(b) At the arraignment and plea:

Paul H. Schoeman, Barry H. Berke, 1177 Avenue of the Americas, New York, NY 10036

_____

(c) At the trial:

_____

(d) At sentencing:

Paul H. Schoeman, Barry H. Berke, 1177 Avenue of the Americas, New York, NY 10036

_____

(e) On appeal:

_____

(f) In any post-conviction proceeding:

_____

(g) On appeal from any ruling against you in a post-conviction proceeding:

_____

16. Were you sentenced on more than one court of an ~~indictment~~ information, or on more than one indictment, in the same court and at the same time?         Yes ☑         No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?         Yes ☐         No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b) Give the date the other sentence was imposed:         _____

(c) Give the length of the other sentence:         _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?         Yes ☐         No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

The judgment of conviction became final on October 10, 2018.  This motion is therefore timely.

AO 243 (Rev. 01/15)                                                                                          Page 12

---

   * The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255,
paragraph 6, provides in part that:
      A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run
   from the latest of –
         (1)   the date on which the judgment of conviction became final;
         (2)   the date on which the impediment to making a motion created by governmental action in violation of
         the Constitution or laws of the United States is removed, if the movant was prevented from making such a
         motion by such governmental action;
         (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has
         been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral
         review; or
         (4)   the date on which the facts supporting the claim or claims presented could have been discovered
         through the exercise of due diligence.

AO 243 (Rev. 01/15)

Therefore, movant asks that the Court grant the following relief:

grant his request for an evidentiary hearing and discovery, grant his motion to vacate convicion and sentence,

or any other relief to which movant may be entitled.

 

s/  John E. Bergendahl

**Signature of Attorney**

s/  Richard C. Klugh

**Signature of Attorney**

Executed (signed) on ___September 20, 2019_____ (date)

**Signature of Movant**

**ADDENDUM – 28 U.S.C. § 2255 CLAIMS**

**GROUND ONE** (<u>Ineffective assistance of counsel leading to waiver of indictment and trial</u>)
and
**GROUND TWO** (<u>Involuntary plea</u>)

In *Strickland v. Washington*, the Supreme Court set forth a two-part test for showing ineffective assistance counsel: (1) "that counsel's performance was deficient," defined as "representation [that] fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense" in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064, 2068 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.

Counsel's misadvice to the movant as described in Grounds I and II is linked to the inexcusable failure to perform and/or complete an adequate investigation that would have established that the movant was and is actually innocent of the offenses charged in the superseding indictment as well as the two-count Information to which the movant ultimately pled guilty. An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero v. Wainwright*, 796 F.2d 1314, 1320 (11th Cir. 1986); *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986). To impart such an understanding to the accused, counsel must, *after making an adequate and independent examination of the facts, circumstances, pleadings and laws involved*, offer his informed opinion as to the best course to be followed in protecting the interests of his client. *Walker v. Caldwell*, 476 F.2d 213, 217 (5th Cir. 1973) (citing *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 322 (1948)).

The prosecution of this case derived from an investigation into the accounting practices of Bankrate, a publicly traded company, and of movant's activities as the company's Chief Financial

1

Officer.  The investigation was launched by the Securities Exchange Commission (SEC) in the 3rd Quarter of 2012.  The scope of the SEC investigation was wide ranging. Upon learning of the investigation, Bankrate's Board of Directors ordered an internal investigation be conducted by outside counsel, Wachtell Lipton, and the company's external auditors, Grant Thornton.

The Grant Thornton audit team, which included forensic accountants, concluded that none of the questioned accounting entries, either individually or in the aggregate, were materially inaccurate and that no fraud or criminal activity had occurred.  In fact, the so called cushion spread sheet that became a feature of the subsequent criminal case was reviewed by the auditors and their findings were shared with the SEC. The auditors were well aware of the so called excess reserves and declined to make or recommend any changes to the financial statements because the reserves were not considered to be materially inaccurate.  Based on its own independent investigation, Wachtell Lipton reached the same conclusion.

Following the completion of the investigation, Grant Thornton and Wachtell Lipton concluded that (1) no changes to Bankrate's financial statements were necessary, given that they were fairly stated in accordance with generally accepted accounting principles (GAAP) and (2) there was no fraud. These conclusions were shared with the SEC as well as Bankrate's Board of Directors, audit committee, the Company's majority shareholder, and investment bankers.  Consequently, the financial statements were included in registration statements filed  in 2013 and 2014 with the blessing of the accountants and attorneys.

By the time movant was initially indicted in December 2017, counsel was or should have been aware of the conclusions reached by Grant Thornton and Wachtell Lipton following their respective investigations. In addition, counsel was aware or should have been aware of four reports prepared by potential expert witnesses. Three of the reports established that movant had not engaged in criminal or fraudulent conduct. The other report concluded that the government's loss calculations

2

were flawed and grossly exaggerated.

Despite having access to the above information, counsel failed to adequately investigate the charges brought against movant. Had counsel done so, it would have become apparent that movant was actually innocent of the charges given that further investigation would have revealed a number of facts including but not limited to:

- The rapid growth of Bankrate through numerous acquisitions, an initial public offering, a secondary public offering and a substantial bond offering created an extraordinarily complex accounting scenario involving numerous general ledger systems. Consequently, movant was placed in a position where he had to make good faith discretionary estimates and decisions on how to book revenue and expense estimates. Ultimately, all entries directed or approved by movant were shown to be either justified, simple judgmental errors and in any event, simply not material using traditional accounting metrics.

- The amounts on the so-called cushion spread sheet are not material. And the government's theory that excess expense reserves were accumulated (on the spread sheet) in good quarters so they could be reversed in bad quarters to artificially increase EBITDA (earnings before interest, taxes, depreciation, and amortization) is factually baseless given that there is no meaningful quarterly fluctuation reflected on the sheet.

- The government's theory of the case ignores the fact that the majority of the potential cushion reserves are tied to acquisitions and legitimate deal cost accruals that are separately tracked and do not impact EBITDA. Adjustments to acquisition reserves were appropriate and do not affect the EBITDA or the

3

financial condition of Bankrate.

- Movant's interim disclosures to the auditors regarding the Management Incentive Program which were made on a total company wide basis were sufficient and complete given the expected year end changes that would have to be made when the program was fully implemented and more complete performance data concerning the separate mortgage, credit card and insurance divisions was available

- The government's allegations concerning the alleged impropriety of movant's sale of a portion of his Bankrate stock in August 2012 are baseless. The trades occurred during an approved open window trading period, and were not based on inside information that Bankrate would underperform in the quarter or that he traded while engaged in accounting fraud that had materially inflated the company's financials.  Quite simply, there was no accounting fraud and the later third quarter dip in the price of Bankrate's stock was the result of issues that had not yet arisen or were not known or envisioned at the time of the trades.  There was no criminality in any aspect of movant's stock sales.

- The government characterized simple errors made by staff accountants as criminal where the error supported their narrative that operating expenses were inappropriately recorded as accrued deal costs. At the same time, the government ignored an error by the same accountant in an earlier quarter where he incorrectly overstated operating expenses that reduced EBITDA – the reason being it did not fit the government's narrative.  The government likewise ignored several of the movant's accounting decisions for the same

4

reason.

- For a number of reasons, any misstatements or omissions in representation letters sent to the auditors were simply not material. In any event, the auditors already had access to all relevant material matters purportedly not included in the letters.

- Any alleged false accounting entries were simply nonmaterial technical infractions that fell well below generally accepted accounting materiality thresholds. Moreover, these entries did not change the overall financial picture of Bankrate.

- Movant hired personnel and implemented programs to improve the accuracy of Bankrate's accounting systems.

- Approximately 97% of CFOs use "non-GAAP metrics" in making accounting decisions. This directly contradicts the government's position that accounting decisions must be irrevocably tethered to GAAP.  In fact, non-GAAP measures are widely used and by definition require the exercise of management judgment and discretion and the use of estimates and projections based on existing data and/or data trends.

But for counsel's ineffective assistance and given movant's actual innocence, he would not have waived indictment, would not have pled guilty, and would have insisted on going to trial.  *See Lee v. United States*, 137 S.Ct. 1958, 1965 (2017) (holding that plea decision are solely "the defendant's" and that counsel's erroneous advice leading to conviction by guilty plea or trial compels collateral relief).  Under *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), the courts must look to the unreasonableness of counsel's actual decision making and advice process, not an imagined strategy.  The issue is not whether if counsel had done the correct analysis, counsel *might* still come

to the same opinion, but whether counsel's actual asserted strategy was based on defective efforts that fall below the level of competent counsel. *See id*. at 385 ("Counsel's failure ... was not based on 'strategy,' but on *counsel's mistaken beliefs ... .*") (emphasis added)."[I]t is sufficient that a petitioner must show only a reasonable probability that the outcome would have been different" —that the movant would not have pled guilty; the movant "'need not show that counsel's deficient conduct more likely than not altered the outcome in the case.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059–60 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067); *see DeLuca v. Lord*, 77 F.3d 578, 590 (2d Cir. 1996) ("The *Strickland* test does not require certainty that the result would have been different."). "When evaluating this probability, 'a court hearing an ineffectiveness claim must consider the totality of the evidence.'" *Brownlee*, 306 F.3d at 1060 (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069).

Trial counsel provided erroneous advice to the movant resulting in a denial of movant's Sixth Amendment right to effective assistance of counsel during the plea negotiation process. The accused in a criminal case has a Sixth Amendment right to counsel that extends to the plea bargaining process. *Missouri v. Frye*, 132 S.Ct. 1399 (2012), *Padilla v. Kentucky*, 559 U.S. 356 (2010), 130 S.Ct. 1473, 1486 (2010). And during plea negotiations, the accused is "entitled to the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). *See, e.g., Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984); *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985) (counsel must provide client with an understanding of the law in relation to the facts, so the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial").

In addition to the decisional prejudice resulting from counsel's ineffective assistance of counsel, the misadvice and misunderstanding of criminal liability with which movant was left—given counsel's explanation of the materiality and related issues, the government's assertions

6

at the plea colloquy as to a factual basis under a theory that all earnings and related statements are material, and the movant's lack of understanding that in light of the law and facts of his case, he is actually innocent—rendered his guilty plea constitutionally invalid as involuntary, unknowing, and unintelligent. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("[I]f a defendant's guilty plea is not... voluntary and knowing, it has been obtained in violation of due process and is therefore void."). "No procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge.'" *Blackledge v. Allison*, 431 U.S 63, 73 (1977).

**GROUND THREE** (Ineffective assistance of counsel – unwarranted sentencing enhancements)

Counsel rendered ineffective assistance in advising the movant to waive and failing to challenge the government's claim of $25,000,000.00 in shareholder losses resulting from the movant's offenses of conviction or relevant conduct. At all times material, Bankrate was a successful company with a market cap of approximately $1.6 billion, with annual revenues in excess of $420 million, and a trading range of its stock that was generally between $9 and $25 per share. The government took the position that on September 15, 2014, Bankrate announced that (1) investors could no longer rely on the company's financial results; (2) there was both an internal and SEC investigation; and (3) the movant was resigning from his role as Bankrate's CFO effective immediately. Subsequently, in 2015 following the conclusion of the internal investigation, Bankrate made another announcement restating its financial results for the three prior years. According to the government, these announcements adversely impacted Bankrate's stock price and individual investors who sold their stock during the three day trading period following these announcements suffered a total loss of $25,984,814.00.

Counsel provided ineffective representation in agreeing to waive, advising the movant to

7

waive, and failing to raise at sentencing any challenge to this loss amount despite knowing that: (a) there was insufficient evidence that any meaningful number of shareholders relied on the announcements as the basis for their decision to sell the stock; (b) that the post announcement trading volume was with historical normal ranges; (c) that any drop in the price of Bankrate's stock during the three-day period following the announcements fell within normal fluctuations of what had historically been a stock that exhibited daily price volatility and could not simply be attributed to the announcements; (d) that any drop in the price of Bankrate's stock following the announcements could be attributed to unrelated market forces in general and/or factors attributed other aspects of Bankrate's business; (e) the 2015 restated financials were lowered because of accounting adjustments that had nothing to do with movant's alleged criminal conduct; (f) neither the 2014 or 2015 announcement identified any disputed accounting issues that could be deemed material and/or material to the extent it could have impacted shareholders decision to sell his or her shares; (g) the impact of the disputed accounting issues on Bankrate's overall financial picture were not material and would not have influenced any investors buy/sell decisions; and (h) that at least one expert economist had preliminarily opined that factors apart from the announcements impacted the stock price and in any event the post announcement fluctuations were consistent with historical normal fluctuations in the stock price.

And with respect to the 2015 restated financials that were lowered due to accounting adjustments having nothing to do with the movant's alleged criminal conduct, these adjustments included reclassification of attorneys and accountants fees incurred in connection with the Apax deal and tax litigation from deal costs to operating expenses, the reclassification of upfront fees paid in connection with a deal with Yahoo, and certain contracts purchase price earn outs were reclassified from assets (goodwill, purchase costs) to operating expenses. These adjustments, which again had nothing to do with movant's alleged criminal conduct, had the effect of lowering historical adjusted

EBITDA figures.   In addition, the restated guidance had nothing to do with anything that occurred in 2011-2012.

The government's loss amount that counsel failed to challenge resulted in a 22-level increase in movant's Guidelines offense level pursuant to U.S.S.G. 2B1.1(b)(1)(L) resulting in an adjusted offense level offense of 37 with a corresponding sentencing range of 210-262 months. Based on that calculation the district court imposed consecutive statutory maximum sentence of 5 years on each of the two counts of conviction. Had counsel challenged the government's calculation the actual loss amount would have been between zero and $40,000.00 resulting in anywhere from no increase to a  4-level increase in movant's adjusted offense level. Even assuming a 4-level increase movant's adjusted offense level would have been 19 with a corresponding sentencing range of  30-37 months.

In addition, given that the loss calculation was unfounded and unattributable to victims of fraud, there was not a basis for a sentencing guideline enhancement for number of victims.  Thus, counsel's ineffectiveness at sentencing in failing to challenge the loss amount and number of victims substantially prejudiced the movant.

Counsel's ineffective assistance in advising the movant to accept the government's proposed loss amount of over $25,000,000.00, and in failing to challenge the guideline calculation errors, despite knowing or having reason to know that the loss and victim figures could neither factually nor legally be attributed to the movant and were subject to viable challenge caused substantial prejudice and warrants relief.

The substantial failures of sentencing counsel to make and preserve appropriate sentencing objections resulted in a reasonable probability of prejudice in this case, particularly in view of the lack of a record showing to support the enhancements applied.  *See United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995) (government must prove enhancement by specific, reliable evidence, not mere speculation or conclusory proffers; enhancement cannot be supported by mere

bare allegation in a PSI).

The prejudice to the movant in this case was substantial additional imprisonment.  In *Glover v. United States*, 531 U.S. 198, 203 (2001), the Supreme Court held that even if the lawyer's representation had caused a sentencing error amounting to only 6 months of jail time, that minimal effect on the sentence was sufficient to warrant relief.  *See Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (citing *Glover* for the proposition that "any amount of [additional] jail time has Sixth Amendment significance.") (alteration in original).

Trial counsel's advice was constitutionally defective and resulted in prejudice to the movant, including in waiving objections to unwarranted enhancements to his sentence.  *See, e.g., Brady v. United States,* 397 U.S. 742, 756 (1970) ("[A]n attorney has a duty to advise a defendant, who is considering a guilty plea, of the available options and possible sentencing consequences."); *United States v. McLain*, 823 F.2d 1457, 1464 (11th Cir. 1987) ("Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client.").   The ineffective representation resulted in the accused accepting plea terms with unwarranted enhancements under the sentencing guidelines.  *See Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012) (outlining analysis of plea prejudice issue).  If the movant had been properly advised as to the unfounded premise for the unfavorable waivers in the plea agreement—including the significant overstatement of any loss amount and related victim enhancement—the movant would have proceeded to trial rather than accept such terms.

The actions of defense counsel in this case—premised on a fundamental misunderstanding of the law, the facts, and the procedures applicable in relation to the sentencing factors—were severely prejudicial to the movant and warrant relief and, at a minimum, an evidentiary hearing under 28 U.S.C. § 2255.  *See Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (court of

10

appeals recognizes: "we generally prefer that the district court simply hold an evidentiary hearing" rather than seek to parse out all potential interpretations of the record; only when the allegations are "affirmatively contradicted" by the record can a § 2255 movant's allegations be rejected without a hearing).[1]

Counsel's errors resulted not from any strategic decisions, but from substantial failures of understanding, advice, and investigation. The law requires counsel to research the relevant law and facts and to make informed decisions. *See United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004). Counsel failed to convey to the movant the necessary factual and legal landscape to enable him to be effectively represented as to plea and. *See Hinton v. Alabama*, 134 S. Ct. 1081 (2014) (granting habeas relief based on counsel's misunderstanding of the quality of resources available to him to address the issues in dispute in criminal case; decisions made by counsel premised on fundamental failures of understanding of the law or inadequate investigation are not excusable as mere tactics).

WHEREFORE, the movant requests that the Court grant his request for an evidentiary hearing and discovery to fully establish his entitlement to relief. Movant further requests that the

---

[1]Section 2255 states:
Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

The Rules Governing § 2255 Proceedings make clear that this language is intended to incorporate the standards governing evidentiary hearings in habeas corpus cases that the Supreme Court articulated in *Townsend v. Sain*, 372 U.S. 293, 312 (1963). *See* Advisory Committee Notes to Rule 8, Rules Governing § 2255 Proceedings (incorporating Notes to Rule 8 of the Rules Governing § 2254 Cases). In *Townsend*, the Court held the district court *must* hold an evidentiary hearing (1) if the prisoner alleges facts that, if true, would entitle her to relief; and (2) the relevant facts have not yet been reliably found after a full and fair hearing. *Id.*, 372 U.S. at 312-13. Actual proof of facts alleged is ***not*** required to demonstrate entitlement to a hearing. "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) (emphasis in original).

Court grant the motion to vacate conviction and sentence and grant such further relief as may be just or required under relevant Eleventh Circuit and Supreme Court precedent.

Respectfully submitted,

s/ John E. Bergendahl
John E. Bergendahl, Esq.
Florida Bar No. 327761
Email: lojeb@bellsouth.net
s/ Richard C. Klugh
Richard C. Klugh, Esq.
Florida Bar No. 305294
Email: rklugh@klughlaw.com
25 S.E. 2nd Avenue, Suite 1100
Miami, Florida 33131
Ph: 305-536-1191
Fax: 305-536-2170

12